[Civ. No. 26459.   Second Dist., Div. Three.   Aug. 13, 1963.]

VIRGINIA LEE RHOADES, Plaintiff and Appellant, v. W. A. SAVAGE, as Real Estate Commissioner, Defendant and Respondent.

Kennedy & Downes, Brian J. Kennedy and Edward P. Downes for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Warren J. Abbott, Deputy Attorney General, for Defendant and Respondent.

SHINN, P. J.—This is an appeal by Virginia Lee Rhoades from a judgment of the superior court denying her petition for mandate for annulment of an order of the State Real Estate Commissioner by which her license as a real estate broker, her license as an inactive real estate salesman, and her license as a business opportunity broker were suspended for 30 days. The order in question also suspended for 30 days the license of Hubert Dean Rhoades, husband of Virginia, as

a real estate broker, and he joined Virginia in the proceeding in mandate for annulment of the order insofar as it affected him. By the judgment of the court the order was annulled as to Hubert, and the commissioner has not appealed.

In the proceeding before the commissioner both petitioners were accused of violation of sections of the Business and Professions Code, namely, sections 10176, subdivision (a) (making a substantial misrepresentation); 10176, subdivision (b) (making false promises of a character likely to influence, persuade or induce); 10176, subdivision (d) (acting for more than one party in a transaction without the knowledge or consent of all parties thereto); 10176, subdivision (i) (engaging in conduct which constituted fraud or dishonesty); and 10177, subdivision (f) (acting in a manner which would have warranted denial of an application for a real estate license); and as to Virginia, that she had acted in a manner which would have warranted a denial of her application for a business opportunity license (§ 10302, subd. (e)). Petitioners were found guilty by the commissioner of violation of subdivisions (a) and (i) of section 10176, of section 10177, subdivision (f), and Virginia, only, of violation of section 10302, subdivision (e), but petitioners were not found guilty of violations of subdivisions (b) or (d) of section 10176.

After a trial in which the court received and considered the transcript of the proceedings before the commissioner and certain oral evidence on behalf of petitioners, the court found and determined that the findings and conclusions of the commissioner with respect to the charges against Virginia were fully supported by the evidence, except that the court did not determine that Virginia had been guilty of conduct constituting fraud. The court found that Virginia was guilty of violation of section 10176, subdivision (b) (making a false promise) but this finding will be disregarded, since the commissioner made no such finding. The court determined that the findings of the commissioner as to Hubert were without support in the evidence. In other respects, the findings of the court did not differ materially from those of the commissioner.

During the trial petitioners offered the testimony of one Howard R. Rogers, who did not testify in the administrative hearing. An objection to the offer was sustained. Upon the appeal it is contended that the court erred in not receiving the testimony of Rogers, the findings are without support in the evidence and that the court in reality found Virginia guilty of violation of section 10176, subdivision (d) (acting

for more than one party in a transaction without the knowledge or consent of all parties thereto), whereas the commissioner had not found her guilty of that alleged violation.

We need to discuss only the court's findings that Virginia was proven guilty of conduct which constituted dishonest dealing and of conduct which would have warranted the denial of an application for a real estate or business opportunity license. These findings in our opinion have support in the evidence. Also, we agree with the court that the evidence before the commissioner was insufficient to justify a finding that Virginia had been guilty of conduct constituting fraud.

The material facts were the following. February 25, 1960, Earl M. Burdo and his wife (to be referred to as Burdo) owned a home on Virazon Drive in La Habra; they gave Virginia and Hubert, doing business as Rhoades Realty, the exclusive right as their agent to sell the property until September 25, 1960; Carl Huff was a real estate broker associated with Rhoades Realty; in July, Glenn M. Farrell and wife (to be referred to as Farrell) made a written offer through Huff to purchase the property for $34,000; Paul Beidleman, who had sold the property to Burdo, was the holder of a second deed of trust on the property and the offer of Farrell was conditioned upon Beidleman's accepting in exchange for the trust deed lien a vacant lot and the equity in another house in La Habra. When the proposal was made to Beidleman it was rejected. July 16th, documents were prepared for the purchase of the property by Farrell from Beidleman, conditioned upon Beidleman's acquiring title to the property through foreclosure of his trust deed. Huff caused the preparation of these documents. Virginia presented the proposal to Beidleman, who declined to execute the documents, but indicated that the proposal would be acceptable to him, provided he should acquire title through foreclosure. August 1st, the unsigned documents were placed with an escrow company and Virginia supplied the information with respect to the matter of consideration which would be necessary for the closing of an escrow if one should be entered into by Farrell and Beidleman. Title was acquired by Beidleman under foreclosure August 18th and thereafter the sale to Farrell was consummated. A commission was paid to petitioners in the amount of $1,428, and $612, in addition, was paid to Huff.

There was uncontradicted evidence that Virginia did not in-

form Burdo of the proposal of Farrell to purchase the property from Beidleman and that Burdo had no knowledge or information concerning that transcation. There was also evidence before the commissioner that after the first offer of Farrell's was rejected Virginia continued to assure Burdo that the Farrells still wanted the property and were trying to sell their lot in order to make a down payment. It is noteworthy that when Burdo questioned Mr. Rhoades he replied that he did not know anything about the deal; however, Virginia assured Mrs. Burdo that she expected the Farrells in the office at any time with a check as they wanted the place ''very badly.'' Mrs. Burdo testified that even two hours before the foreclosure Virginia told her that the Farrells ''might be in any time with a check; in fact, they had been [in] a couple of nights before with the check, but it wasn't certified.'' Burdo had no written offer from any other prospective purchaser. Mr. Burdo testified that Virginia suggested that the property be listed with other brokers but he replied that she had an exclusive and if others wanted to deal they had to deal through her. He testified that up until the time of the foreclosure Virginia kept telling him '' 'Don't worry—we will sell it—the Farrells want the property.' That was right up until the day of foreclosure.'' He also testified that no one told him ''about another transaction wherein the same Farrells were the prospective purchasers.'' Virginia did not testify to having informed Burdo of the proposed deal between Farrell and Beidleman; the only testimony that she gave touching that subject was that Burdo said to her in her office: ''I suppose Mr. Beidleman will sell it directly to him,'' if Beidleman got it back, and that nobody would have any control over it. She testified that she personally presented to Beidleman the second offer submitted by the Farrells. She denied having assured the Burdos shortly before the foreclosure that the Farrells had again offered to purchase the property from them. ▆ This conflict in the testimony as to a material fact was resolved by the commissioner in favor of the testimony of Mr. and Mrs. Burdo, and, of course, the conflict is not subject to review.

▆ As previously mentioned, the trial court impliedly found that Virginia was not guilty of conduct constituting fraud, but did find that she was guilty of dishonesty.

Although we agree with the implied finding of the trial court that Virginia had no intention to defraud Burdo, whether she was guilty of dishonest conduct is another matter.

Dishonesty is a term of broad meaning and the situations in which it may become manifest are infinite. Definitions of the term which the court found useful were stated in *Hogg* v. *Real Estate Comr.*, 54 Cal.App.2d 712 [129 P.2d 709]. It was held that a real estate broker was not guilty of dishonesty for refusing to return money to a client where the broker acted in good faith, and the duty to return the money was debatable.

In the present case the question is not whether Virginia believed she had a legal right to undercut Burdo by dealing secretly on the side with Beidleman. The most that can be said in her favor is that she did not understand she was acting in violation of a legal duty. But her ignorance of her duty of fidelity could not excuse her.

Nothing could be more important in the qualification of one to act as the agent of another than a full understanding of the essential duties and obligations of the relationship. The commissioner may refuse to grant an application for a real estate license if the applicant does not furnish proof of "honesty, truthfulness and good reputation" and the license may be suspended for the same reasons (Bus. & Prof. Code, §§ 10150-10152), and before granting a real estate license the commissioner must be shown that in addition to proof of honesty, truthfulness and good character the applicant has a "general and fair understanding of the obligations between principal and agent, of the principles of real estate practice and the canons of business ethics pertaining thereto, . . ." etc. (Bus. & Prof. Code, § 10153, subd. (c).)

No doubt the word "honesty" as used in these sections has the broadest possible meaning. It has been defined as "a fastidious allegiance to the standards of one's profession, calling or position; fairness and straightforwardness of conduct, speech, integrity; truthfulness; freedom from fraud." (Webster's New International Dictionary, Second Edition.) There can be no escape from the conclusion that the conduct of Virginia was not reconcilable with honesty. Truthfulness means "the truth, the whole truth and nothing but the truth." One who makes a statement in the expectation that the facts stated will be relied upon by another, and who withholds material facts and thereby creates a false understanding, is as guilty of untruthfulness as he would be if the facts he stated were untrue. There was evidence that Mrs. Rhoades falsely represented to Burdo

that she expected to consummate a deal for them with Farrell, even after she learned that Farrell's offer to Beidleman was acceptable to him and that a sale would be consummated as soon as Beidleman acquired title to the property. In concealing from Burdo that she had abandoned all further effort to negotiate a sale by Burdo to Farrell, Mrs. Rhoades was guilty of a failure to tell the truth and of deceit. There are precepts of conduct in matters of business that are universally recognized, and of these no one can be permitted to profess ignorance. Lack of understanding can furnish no excuse for failure to conform one's conduct to accepted standards of honesty and truthfulness.

We must agree with the trial court and the commissioner that the conduct of Mrs. Rhoades was so lacking in honesty and truthfulness as to have furnished reason for denial of an application for a real estate or business opportunity license and a reason for suspension of her licenses.

■ After the commissioner had made his order petitioners applied for a reconsideration. They offered a declaration of Mr. Rogers respecting a conversation he had had with Burdo in which the latter said that Beidleman was planning to sell the property to a school teacher (Farrell was a school teacher) ; he, Rogers, had later had a talk with Mrs. Rhoades in which he failed to relate to her this remark of Burdo's. The petition for reconsideration was denied. In the trial petitioners called Rogers and offered to prove the foregoing facts. Objection was made that diligence had not been shown to produce Rogers as a witness at the hearing, and upon other grounds. The matter was discussed at length and the court ruled that the testimony of Rogers could have been produced at the hearing in the exercise of reasonable diligence, and that it would not change the result in that it "in no wise indicates that Mr. Burdo had any knowledge that Mrs. Rhoades was in fact during the time of her exclusive agency was dealing with Mr. Beidleman as a prospective buyer [seller]" etc. The testimony would have been immaterial to the issue, which was whether Mrs. Rhoades concealed from Burdo her secret dealings with Beidleman and Farrell. The fact that Burdo suspected that after the foreclosure Beidleman might sell to Farrell could not excuse Virginia's failure to tell Burdo that she had switched her allegiance from him to Beidleman. And it is illogical to claim that Burdo should have suspected that she might be trying to sell the property for Beidleman when she was at the same time assuring him that she was about to

sell it for him. The testimony of Rogers would have been of no benefit to her and its exclusion was not error.

In appellant's brief it is said "The findings in the record are no more nor less than camouflage." It is argued at length that the court believed that Virginia was guilty of violation of subdivision (d) of section 10176 (acting for more than one party in a transaction without the knowledge or consent of all the parties), and that that was the whole case against her. The argument is built upon numerous statements of the court which characterized appellant's conduct as "double dealing," and indicated the belief that it was in violation of subdivision (d). There was a vast amount of discussion between the court and counsel upon the nature of the violations, and it would have been remarkable if, in saying so much, only the matured thoughts of the participants would have been expressed. Appellant's argument does not possess merit. It is true that the court was of the opinion that appellant's conduct amounted to "dual representation," which, in the broad sense, it did, even if not in a strictly legal sense. But tentative views expressed by the court as the trial progresses are of no efficacy whatever as impeachment of the court's findings and conclusions. (*Oldis* v. *La Societe Francaise,* 130 Cal.App.2d 461 [279 P.2d 184].) Any other rule would create hopeless confusion. The fact is that the court was at all times convinced of the untruthfulness of Mrs. Rhoades and believed that her conduct was shown to have been dishonest.

The judgment is affirmed.

Ford, J., and Files, J., concurred.

A petition for a rehearing was denied September 10, 1963, and appellant's petition for a hearing by the Supreme Court was denied October 9, 1963.