[Civ. No. 43983. First Dist., Div. One. Sept. 27, 1979.]

EDWARD MAURICE GOLDE, Plaintiff and Appellant, v.
DAVID H. FOX, as Real Estate Commissioner, etc., Defendant and
Respondent.

COUNSEL

Ralph Nathanson and Jeremy A. Archdeacon for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Charles X. Delgado, Deputy Attorney General, for Defendant and Respondent.

OPINION

MARTIN, J.*—Appellant appeals from a superior court judgment denying his petition for a writ of mandate to compel respondent David Fox, Commissioner of the Department of Real Estate (herein after called Commissioner) to set aside his decision revoking appellant's broker's license and substituting therefor a restricted salesman's license.

---

*Assigned by the Chairperson of the Judicial Council.

The Commissioner's office filed an accusation charging the appellant with having entered a guilty plea to violation of section 11359 of the Health and Safety Code (possession of marijuana for sale); that said offense is "a crime involving moral turpitude" and thus "grounds for disciplinary action under the provisions of section 10177, subdivision (b) of the Business and Professions Code." An amended version of the accusation further alleged that the appellant's acts constitute "a crime that is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued and is grounds for disciplinary action under the provisions of section 490 of the Business and Professions Code." A hearing was requested to determine whether appellant's real estate broker's license should be suspended as revoked. Said hearing was had before an administrative law judge (Kendall), with the resultant proposed decision issued November 5, 1976, recommending revocation of appellant's license but also recommending the issuance of a restricted broker's license.

Commissioner rejected the proposed decision and on July 22, 1977, issued his own order revoking the broker's license, but permitting the issuance of a restricted salesman's license.

Appellant in his petition for writ of mandate alleged the Commissioner "prejudicially abused his discretion in this matter, in that the findings are not supported by the evidence and he failed to make findings on very important matters of evidence, all of them favorable to the petitioner." He prayed for a writ compelling the Commissioner to set aside his order and adopt the proposed decision of the administrative law judge. The matter was tried in the superior court and the writ was denied and judgment was entered on March 22, 1978. A timely notice of appeal was filed.

The facts of this case are not in dispute and most of the allegations of the petition were admitted. On June 13, 1974, appellant was charged by information with two felonies: violation of section 11359 of the Health and Safety Code (possession of marijuana for sale), and violation of section 11360 of the Health and Safety Code (transportation of a controlled substance). He pled guilty to the possession for sale charge on condition that the transportation charge be dismissed. Appellant thereafter pursuant to Penal Code section 1203.03 underwent 90 days of diagnostic evaluation at Vacaville Medical Facility and on February 5, 1975, was placed on felony probation on condition he serve one year in the county jail. The facility at Vacaville felt he was an acceptable can-

didate for probation and felt county jail time was indicated. Among other notable conditions of probation was abstinence from flying an airplane, and a requirement of submission to chemical testing for drug usage. He was granted early release from county jail on July 8, 1975. The details of appellant's offense are set forth in testimony that he initiated at the administrative hearing and in the probation report. On June 4, 1974, he landed a small airplane at the Santa Nella Airport in Merced County. He had a certified private pilot's license. The plane contained 800 to 1,000 pounds of marijuana with an agreed street value of $256,000. He had obtained the marijuana in Mexico. It would appear the airplane ran out of gasoline, appellant having overrun his rendezvous point. The arresting police officers felt the appellant was cooperative only to a point since he would not and did not divulge any information about the marijuana or its import.

Appellant admitted to being an occasional user of marijuana. He stated he was to meet a truck for delivery three to five miles on the California side of the Mexican border but could not locate the truck so decided to fly back to Oakland where he had rented the airplane. However, he explained landing where he did on the basis that as he flew over he observed a body of water and felt there was an excellent opportunity to develop the land.

In mitigation it was shown appellant had no prior criminal record. An attempt was made to show he was under financial and emotional strain. He was in a serious auto accident in 1969 and his marriage had broken up in 1970. He introduced evidence to show he was paying $150 per month child support and had been under a psychiatrist's care since 1971. In 1974 he was placed on lithium carbonate and this has had a stabilizing effect. His doctor indicated "he has suffered from an illness with the mental content characterized by alternating moods as well as grandiose thinking and impaired judgment. Under severe stress on two occasions his symptoms were aggravated, and on one of these occasions he was involved in legal difficulties which resulted in his present situation." Diagnostic report indicated he was not criminally oriented. Probation officer felt the appellant tried to "con" him in part of the interview and further doubted the truth of some of the information gained from the appellant at the time he prepared the probation report. At the time of the hearing he was employed by Red Carpet Realtors and his employer had no reason to doubt his emotional stability, honesty or capability. As a form of rehabilitation appellant agreed to make speeches to service groups and youth groups warning against involvement in

drugs and in fact gave several such talks. It had been his stated intention "to make a large sum of money for working for a very short period of time." He concedes his participation in this venture was free and voluntary.

His prior employment had primarily been as a salesperson for industrial firms. At the time of his plea of guilty he was 35 years old and listed his then employment as "law assistant" to a law firm. He states from 1972 to 1974 he was self-employed as a real estate salesman. His doctor indicated he should be allowed, as a form of therapy, to return to the field of real estate where he has shown an affinity for such type of work.

Before considering the issues raised on appeal, the scope of review by this court is noted. Appellant shows some confusion as to the role of this court in reviewing the trial court's ruling, and respondent avoids the question entirely. ■ The trial court followed its independent judgment and reweighed the evidence presented to the administrative law judge. This was the correct scope of review for the trial court, because respondent's decision revoking appellant's license affected a fundamental vested right of appellant. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966[103 Cal.Rptr. 455]; *Ring* v. *Smith* (1970) 5 Cal.App.3d 197, 203 [85 Cal.Rptr. 227].)

■ When the trial court has exercised independent judgment, "on appeal the question is not whether the administrative determination was supported by the weight of the evidence, but whether, disregarding all contrary evidence, there is substantial evidence in support of the *trial court's findings*." (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 217, p. 3974, italics in original; *Bixby* v. *Pierno, supra,* 4 Cal.3d at pp. 143, fn. 10, 149; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Manning* v. *Watson* (1952) 108 Cal.App.2d 705, 712 [239 P.2d 688].)

The record on appeal contains neither findings of the trial court nor any request therefor. Code of Civil Procedure section 632 has provided since 1968 that "Unless findings are requested, the court shall not be required to make written findings and conclusions." On the state of the record, therefore, it must be concluded that findings were waived. ■ "Every intendment is to be indulged in favor of the judgment and where the court fails to make findings of fact and conclusions of law it

will be presumed that they were waived unless the contrary is made to appear affirmatively by the record on appeal." (*Watson v. Borcovich* (1939) 34 Cal.App.2d 585, 586-587 [94 P.2d 76]; Evid. Code, § 664.)

█  Our role in the absence of findings is laid out in *Price v. Price* (1952) 114 Cal.App.2d 176, 179 [249 P.2d 841]: "the appellate court will not weigh the evidence to determine what is true and what is not, but will assume that the trial court found every fact essential to support the judgment, and will search the record for the purpose only of determining whether there is substantial evidence supporting the judgment and will resolve all doubts in favor of the judgment. [Citation.]" (See also *Beehan v. Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 861 [137 Cal.Rptr. 528]; *Lane & Pyron, Inc., v. Gibbs* (1968) 266 Cal.App.2d 61, 65[71 Cal.Rptr. 817].)

In the Commissioner's decision or order revoking appellant's broker's license and directing a restricted real estate salesman's license shall issue, the Commissioner made, among others, the following findings and determinations:

"IV

"On or about November 4, 1974, in the Superior Court of the State of California, In and For the County of Merced, respondent entered a plea of guilty to violation of Section 11359 of the California Health and Safety Code (Possession of Marijuana for Sale), a Felony.

"V

"The following matters in mitigation and explanation were established by the evidence:

"a)  Respondent, a small plane pilot, was arrested on June 14, 1974, after landing in California with a load of 800 pounds of marijuana he had flown in from Mexico, knowingly and with intent to profit therefrom. The marijuana had a street value of Two Hundred Fifty-Six Thousand Dollars ($256,000).

"b)  Respondent spent three months in Vacaville undergoing evaluation and later was sentenced to one year in the County Jail. He was released on July 8, 1975, and will continue on formal probation until

March 4, 1978, but his probation officer believes him to be a candidate for early probation termination because of his cooperative attitude and strict observance of his probation conditions.

"DETERMINATION OF ISSUES

"I

"The matters set forth in Finding IV above establish the conviction of respondent for an offense that is both a felony and a crime involving moral turpitude and therefore grounds exist for disciplinary action under the provisions of Section 10177(b), Business and Professions Code of the State of California.

"II

"The matters set forth in Finding IV above establish respondent has committed a crime that constitutes grounds for disciplinary action pursuant to provisions of Section 490, Business and Professions Code of the State of California."

■ Appellant's contentions on appeal are that (a) the Commissioner erred in determining that appellant violated section 490 of the Business and Professions Code in that no evidence was introduced showing how the crime to which appellant pled guilty is substantially related to the qualifications, functions or duties of a real estate broker; (b) that the Commissioner had erred in determining that appellant had violated section 10177, subdivision (b) of the Business and Professions Code in that no showing was made that the felony in question involved moral turpitude; and (c) the Commissioner erred as a matter of law in determining that appellant's showing of rehabilitation was insufficient, that this issue required a finding.

We find appellant's citation of errors without merit. We discuss the same in the order above set out.

Section 490 of the Business and Professions Code[1] reads in part as follows: "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially

---

[1]Unless otherwise noted, all statutory references are to the Business and Professions Code.

related to the qualifications, functions, or duties of the business or profession for which the license was issued."

The record shows that appellant pled guilty to a felony. We now discuss the substantial evidence in this record supportive of the finding that the offense was substantially related to appellant's qualifications to serve as a real estate broker. Both the administrative law judge and the Commissioner ruled that the guilty plea established that appellant "has committed a crime that constitutes grounds for disciplinary action pursuant to provisions of Section 490, Business and Professions Code of the State of California." The obvious import of the statute is clear. The Supreme Court observed in *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 874 [132 Cal.Rptr. 464, 553 P.2d 624]: "Indeed, even a conviction can no longer support a denial or revocation of a license unless the crime is 'substantially related to the qualifications, functions, or duties of the business or profession' in question. (Bus. & Prof. Code, §§ 480, subd. (a), & 490.)" (See also *Brandt* v. *Fox* (1979) 90 Cal.App.3d 737 [153 Cal.Rptr. 683], a case involving § 480 as opposed to the instant case's involvement with § 490.)

Honesty and truthfulness are two qualities deemed by the Legislature to bear on one's fitness and qualification to be a real estate licensee. If appellant's offense reflects unfavorably on his honesty, it may be said to be substantially related to his qualifications. (See *Ring* v. *Smith, supra,* 5 Cal.App.3d 197; *Rhoades* v. *Savage* (1963) 219 Cal.App.2d 294, 299 [32 Cal.Rptr. 885].) Illegal possession and transportation by airplane with the attendant sophisticated planning of a quarter of a million dollars worth of marijuana, admittedly for the purpose of personal gain, is clearly an illicit act of deceit and dishonesty in a fundamental sense.

The crime here, of course, does not relate to the technical or mechanical qualifications of a real estate licensee, but there is more to being a licensed professional than mere knowledge and ability. Honesty and integrity are deeply and daily involved in various aspects of the practice. Section 10152 provides: "The commissioner may require such other proof as he may deem advisable concerning the honesty and truthfulness of any applicant for a real estate license, or of the officers of any corporation making such application, before authorizing the issuance of a real estate license. For this purpose the commissioner may call a hearing in accordance with the provisions of this part relating to hearings. To assist in his determination the commissioner shall require every

original applicant to be fingerprinted." Section 10152 has been held constitutionally valid. (*Riley* v. *Chambers* (1919) 181 Cal. 589, 595 [185 P.2d 855, 8 A.L.R. 418]; *Payne* v. *Real Estate Commissioner* (1949) 93 Cal.App.2d 532, 537 [209 P.2d 419]; *Glick* v. *Scudder* (1945) 69 Cal.App.2d 717, 719 [160 P.2d 90]; *McDonough* v. *Goodcell* (1939) 13 Cal.2d 741 [91 P.2d 135, 123 A.L.R. 1205].)

Established case law gives recognition to the requirement that a real estate licensee possess the qualifications of honesty and integrity. In the frequently cited leading case of *Riley* v. *Chambers, supra*, 181 Cal. 589, the court defended the then newly enacted legislation regulating the real estate profession in the following language, at pages 593-594: "The controversy is over the first question, whether or not the general limitation that only persons of good character should engage in the business is a permissible one. The position of counsel opposing the validity of the act is that 'To prevent a person engaging in a lawful and innocuous business or occupation because of his moral character or reputation is in our opinion an arbitrary invasion of private rights and liberties.' This may be true of some businesses and vocations. It is certainly not true of all. Where the occupation is one of which it can be fairly said that those pursuing it should have certain particular qualifications, it is within the power of the legislature to exact reasonable assurances of those pursuing the occupation that they do possess these qualifications. The most familiar illustrations of this are the qualifications of preliminary training and learning required of professional men such as lawyers, physicians, dentists, pharmacists and architects. Where the occupation is one wherein those following it act as the agents and representatives of others and in a more or less confidential and fiduciary capacity, it certainly can be fairly said that those pursuing it should have in a particular degree the qualifications of 'honesty, truthfulness and good reputation.'[2] The occupation of a real estate agent is of just this sort. He acts for others and in a more or less confidential and fiduciary capacity."

The above language is unduly equivocal. A real estate broker often acts in a confidential and fiduciary capacity for his clientele. The term "honesty" as used in section 10152 is to be given the broadest possible

---

[2]Section 10152 formerly provided that the Commissioner could require proof of the "honesty, truthfulness and good reputation" of any applicant. This section was amended to delete the phrase "and good reputation" by Statutes 1977, chapter 247, section 1.

meaning. (*Rhoades* v. *Savage, supra,* 219 Cal.App.2d 294, 299) The real estate profession has, over a period of years, excluded unfit persons and as a result thereof an appreciable amount of public trust and confidence has been built up. The public exposing themselves to a real estate licensee has reason to believe that the licensee must have demonstrated a degree of honesty and integrity in order to have obtained such a license.

In view of the nature of the felony conviction of appellant, the quantity of marijuana involved and the motivations of appellant—all findings of fact made by the Commissioner—it was reasonable and proper for the Commissioner to conclude that the crime of appellant demonstrated a lack of honesty and integrity in his character. Accordingly, the Commissioner properly found that appellant had violated section 490. That is, that appellant had been convicted of a crime substantially related to the qualifications, functions, or duties of a real estate licensee.

Appellant contends that section 490, as well as *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], and the other cases cited by appellant, require that there be a specific finding that the conduct in question bear a substantial relation to the qualifications, functions, or duties of a real estate licensee. Section 490, however, does not require such a specific finding.

Further, the line of cases exemplified by *Morrison* is distinguishable from the facts presented in these proceedings and therefore does not dictate that specific findings be made here. *Morrison* involved the private conduct of a teacher "in a limited, noncriminal physical relationship...of a homosexual nature...6 years in the past." The teacher was neither accused nor convicted of any criminal activity. The California Supreme Court in *Pettit* v. *State Board of Education* (1973) 10 Cal.3d 29 [109 Cal.Rptr. 665, 513 P.2d 889] stated at page 34: "[W]e note several important factors which would distinguish *Morrison* from the instant case. In *Morrison,* the unspecified conduct at issue was noncriminal in nature,...a second distinguishing feature between *Morrison* and the instant case is, of course, that in *Morrison* the conduct at issue occurred entirely in private...." (Italics in original.)

Similarly, the facts herein are vastly different from those of *Morrison* and related cases. By any standard, in the perpetration of the crime to

which appellant pled guilty, he demonstrated a character lacking in honesty and integrity. Thus, to make a specific finding that the illegal conduct of appellant is substantially related to the qualifications, functions and duties of a real estate licensee is to state the obvious. Such a finding, in fact, may be implied. In *DeMartini* v. *Department of Alcoholic Beverage Control* (1963) 215 Cal.App.2d 787 [30 Cal.Rptr. 668], the court stated at pages 814-815: "In *Greenberg* v. *Hastie, supra,* 202 Cal.App.2d 159, 173, we quoted from *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640...as follows: '"[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made."' We find no obstacle to the application of this principle to findings in administrative proceedings."

The Commissioner should not be mandated to continue to license someone as a broker where the nature of his crime demonstrates his unfitness to hold a real estate broker's license. It is submitted that there is a substantial relationship between the criminal acts of appellant and the qualifications, functions and duties of a real estate licensee. Discipline, therefore, was proper under section 490.

■ As already noted, appellant cited as error the finding that he had violated section 10177, subdivision (b) and that said felony involved moral turpitude.

Section 10177, subdivision (b) provides: "The Commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following:...(b) Entered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony or a crime involving moral turpitude, and the time for appeal has elapsed or the judgment of conviction has been affirmed on appeal, irrespective of an order granting probation following such conviction, suspending the imposition of sentence, or of a subsequent order under the provision of Section 1203.4 of the Penal Code allowing such licensee to withdraw his plea of guilty and to enter a plea of not guilty, or dismissing the accusation or information."

Appellant's discipline had therefore to be predicated on three facts: (1) a guilty plea, (2) a felony or a crime involving moral turpitude which (3) bears a substantial relationship to appellant's fitness as a real

estate broker. The trial court found that the weight of the evidence supported the discipline imposed on appellant, and therefore impliedly made the three findings just listed. (See *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 98 [100 Cal.Rptr. 73, 47 A.L.R. 3d 742].)

Analytical problems and some duplication are created by the judicial importation of a requirement similar to "substantial relation to qualification" (§ 490) into the term "moral turpitude." *In Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 218-219, a teacher lost his teaching certificate for participating in a "limited, non-criminal physical relationship...of a homosexual nature...some six years in the past." His record was otherwise virtually spotless. The court ruled as follows: "We therefore conclude that the Board of Education cannot abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (Fns. omitted.) (*Id.,* at p. 229.)

A lawyer was involved in marijuana smuggling in *In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97]. Although charged with conspiracy to smuggle with intent to defraud the United States, he pleaded guilty to failure to pay the federal marijuana transfer tax. (26 U.S.C.A. § 4744(a).) There was good evidence that he had been entrapped into his involvement by the importunity of a "friend" who was acting as an informer for the Customs Service. His actual conduct included introducing the "friend," a pilot, to friends of his who used and sold marijuana, as well as lending and delivering money.

The question before the court was whether Higbie's conduct involved moral turpitude.

"'Moral turpitude' is an elusive concept incapable of precise general definition. One dramatic exposition of the term was rendered by this court in 1938, and has since been consistently followed: 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]; see also *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 73 [64 Cal.Rptr. 785, 435 P.2d 553]; *In re Boyd* (1957) 48 Cal.2d 69, 70 [307 P.2d 625].). Moral turpitude has also been described as any crime or misconduct committed without excuse (*In re Hallinan* (1954) 43 Cal.2d 243, 251 [272 P.2d 768]; *In re Rothrock* (1940) 16 Cal.2d 449, 453 [106 P.2d 907, 131 A.L.R. 226]), or as any 'dishonest or immoral' act, not necessarily a crime. (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 195, at p. 202.) '"The concept of moral turpitude depends upon the state of public morals, and may vary according to the community or the times,"' (see *In re Hatch* (1937) 10 Cal.2d 147, 151 [73 P.2d 885]), as well as on the degree of public harm produced by the act in question.

"In evaluating conduct that may or may not involve moral turpitude, we must recognize the purpose for which we have established the 'moral turpitude' standard: to ensure that the public, the courts, and the profession are protected against unsuitable legal practitioners. (See *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447, 471-472 [55 Cal.Rptr. 228, 421 P.2d 76]; *In re Rothrock, supra,* 16 Cal.2d at p. 454; cf. *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d at p. 73 and fn. 6 (medical doctor).) The objective is not to impose punishment upon members of the profession. To hold that an act of a practitioner constitutes moral turpitude is to characterize him as unsuitable to practice law." (6 Cal.3d at pp. 569-570.)

The crime of which he was convicted did not constitute moral turpitude as a matter of law because all it required was "possession of marijuana and...failure, however inadvertent, to pay the tax." (*In re Higbie, supra,* 6 Cal.3d at p. 571.) The court then looked "to the whole course of respondent's conduct which reflects upon his fitness to practice law." (*Id.,* at p. 572.) "The Disciplinary Board of the State Bar found that respondent 'engaged in a conspiracy to smuggle a large quantity of marijuana into the United States of America for the purpose of distribution.' If we read this finding to mean that respondent's motivation for engaging in the conspiracy was to effect unlawful distribution of marijuana, then we must surely conclude that this behavior

involved moral turpitude. The purposeful evasion of federal laws that require the reporting and taxation of imported marijuana constitutes a fraud upon the government, an act of dishonesty no more tolerable than fraud upon an individual. 'Although the problem of defining moral turpitude is not without difficulty [citations], it is settled that whatever else it may mean, it includes fraud....' (*In re Hallinan, supra,* 43 Cal.2d at p. 247.)" (*Ibid.*)

The court found that Higbie did not share the conspiracy's fraudulent purpose, but found moral turpitude in his advice to the "friend to place himself in jeopardy of the law and to engage in an unlawful conspiracy." (*Id.,* at p. 573.) In the case at bar, appellant admittedly conspired with other people to smuggle the marijuana for personal gain. His conduct, including the actual piloting of the plane, constitutes moral turpitude.

Moral turpitude was also found in *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477], in which a lawyer pleaded guilty to Health and Safety Code section 11359, possession of marijuana for sale. The lawyer had helped a marijuana salesman transport 42 kilos into the salesman's home. There were some indicia that the lawyer was using the home as his office at the time. The lawyer, who cooperated fully with the police, was not financially involved with the drugs, but had only gone along with the salesman to help a friend with an errand.

"As in *In re Higbie,* 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97], another conviction reference matter, we determined that petitioner's offense did not involve moral turpitude as a matter of law, but warranted State Bar inquiry into whether the facts and circumstances surrounding commission of the offense involved moral turpitude; and such inquiry resulted in a finding that the conviction was one involving moral turpitude. Petitioner was unquestionably aware of the laws proscribing possession and sale of marijuana, which laws provide for severe penalties for those convicted of their violation. (See Health & Saf. Code, §§ 11358-11361.) Petitioner acknowledged that he knew he was in violation of the law, and the record shows that he was at the time representing a criminal defendant who was charged with possession of marijuana and restricted dangerous drugs and later convicted on the latter charge. Under the circumstances, the finding that moral turpitude was involved is amply warranted.

"All of petitioner's acts were admittedly done voluntarily. Neither Pytlewski nor Singer urged him to participate. His only excuse is that he acted out of friendship and a spirit of adventure. As hereinabove pointed out, however, petitioner admitted that his interest in an adventure was merely a rationalization to prevent him from 'either reporting his friends to the authorities or disassociating himself from them.'

"The oath of office taken by petitioner when he was admitted to practice included an oath to support the laws of the state and to maintain the respect due to the courts of justice. (Bus. & Prof. Code, § 6068, subds. (a), (b).) The facts hereinabove recited clearly show that petitioner has failed to abide by this oath." (11 Cal.3d. at p. 421.) Appellant herein was also well aware that his conduct was in violation of the law.

On the other hand, no moral turpitude was found in the actions of a school teacher who came upon a potted plant in an open field and took it home, thinking it might be marijuana. (*Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920 [123 Cal.Rptr. 830].) He was convicted of cultivating marijuana. (Health & Saf. Code, § 11358.) This offense does not involve moral turpitude as a matter of law, although it may do so as a matter of fact.

"The court discussed *Higbie* and *Cohen,* and adopted the trial court's reasoning: "The court stated that the Board did not make the slightest attempt to prove that the offense involved moral turpitude. The court noted that no student was involved in the offense, and that the offense did not occur in public or on school premises. It regarded the growing of one plant of marijuana as being an obviously different category than cases involving sexual misconduct with a student, homosexuality, fraud, dishonesty and similar conduct.

"So do we. The offense involved here is, in our view, much less serious than the conduct involved in *Cohen, supra.* The offense of cultivating marijuana may be committed in a wide variety of factual settings. The actions of a curious school teacher who chances upon and brings home a single plant in a pot cannot be equated with those of a person who assiduously cultivates a whole field of marijuana plants in order to sell the crop or of one who intends to sell marijuana in his possession." (50 Cal.App.3d at p. 924.) Appellant clearly intended to sell the great quantity of marijuana that was in his possession.

A very recent and well considered opinion discussed in great detail the concept of moral turpitude. (*Rice v. Alcoholic Beverage Control Appeals Bd.* (1979) 89 Cal.App.3d 30, 36 [152 Cal.Rptr. 285].) While dealing with regulations pertinent to the department of alcoholic beverage control, the court in *Rice* held that convictions of the crimes of possession of cocaine or marijuana for purposes of sale constitute moral turpitude as a matter of law within the meaning of California Constitution, article XX, section 22, and Business and Professions Code section 24200.

In discussing moral turpitude at pages 36-37, the court had the following to say: "The elusive concept of 'moral turpitude' has long been the subject of judicial scrutiny; our courts have grappled with the amorphous term in a variety of factual contexts largely involving disciplinary proceedings. (*In re Rohan* (1978) 21 Cal.3d 195 [145 Cal.Rptr. 855, 578 P.2d 102]; *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477]; *In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]; *In re Higbie, supra,* 6 Cal.3d 562; *In re Hallinan* (1954) 43 Cal.2d 243 [272 P.2d 768]; *In re McAllister, supra,* 14 Cal.2d 602 [95 P.2d 932] [attorneys]; *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] [school teacher]; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d 67 [medical doctor]; *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447 [55 Cal.Rptr. 228, 421 P.2d 76] [bar admittee]; see also *Board of Trustees v. Judge* (1975) 50 Cal.App.3d 920 [123 Cal.Rptr. 830] [school teacher]; *Weissbuch v. Board of Medical Examiners* (1974) 41 Cal.App.3d 924 [116 Cal.Rptr. 479] [medical doctor]; *Otash v. Bureau of Private Investigators* (1964) 230 Cal. App.2d 568 [41 Cal.Rptr. 263] [private investigator].)

"Notwithstanding its frequency of use as a legislatively imposed standard of conduct for purposes of discipline, the concept by nature defies any attempt at a uniform and precise definition. For nearly 40 years our highest court has defined moral turpitude as 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]) or '"everything done contrary to justice, honesty, modesty or good morals."' (*In re McAllister, supra,* 14 Cal.2d 602, 603; see also *In re Rohan, supra,* 21 Cal.3d 195, 200 [145 Cal.Rptr. 855, 578 P.2d 102]; *In re Fahey, supra,* 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]; *In re Hig-*

*bie, supra,* 6 Cal.3d 562, 569; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d 67, 73; *In re Boyd* (1957) 48 Cal.2d 69, 70 [307, P.2d 625]; Webster's Third New Internat. Dict., p. 2469.) Yet it is innately a relative concept depending upon both contemporary moral values and the degree of its inimical quality (*In re Fahey, supra,* at p. 849) whose purpose as a legislated standard is not punishment but protection of the public. (*In re Rothrock* (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]; see also *Hallinan v. Committee of Bar Examiners, supra,* at pp. 471-472; *Copeland v. Dept. of Alcoholic Bev. Control* (1966) 241 Cal.App.2d 186, 188 [50 Cal.Rptr. 452].)"

"While not every public offense may involve conduct constituting moral turpitude without a showing of moral unfitness to pursue a licensed activity (*Hallinan v. Committee of Bar Examiners, supra,* 65 Cal.2d. 447, 459), conviction of certain types of crimes may establish moral turpitude as a matter of law. (*In re Fahey, supra,* 8 Cal.3d 842, at p. 849.) Thus, moral turpitude is inherent in crimes involving fraudulent intent, intentional dishonesty for purposes of personal gain or other corrupt purpose (see *In re Hallinan, supra,* 43 Cal.2d 243, 247-248; see also *Yakov v. State Board of Medical Examiners, supra,* 68 Cal.2d 67, 73) but not in other crimes which neither intrinsically reflect similar inimical factors nor demonstrate a level of ethical transgression so as to render the actor unfit or unsuitable to serve the interests of the public in the licensed activity. (See, e.g., *In re Rohan, supra,* 21 Cal.3d. 195; *In re Fahey, supra,* 8 Cal.3d 842 [failure to file income tax returns]; *In re Higbie, supra,* 6 Cal.3d 562 [failure to pay marijuana transfer tax]; *Morrison v. State Board of Education, supra,* 1 Cal.3d 214 [homosexual conduct]; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d 67 [doctor furnishing weight-reducing amphetamines without a prescription]; *Hallinan v. Committee of Bar Examiners, supra,* 65 Cal.2d 447 [acts of civil disobedience]; *In re Hallinan, supra,* 43 Cal.2d 243 [tax evasion]; cf. *In re Cohen, supra,* 11 Cal.3d 416 [possession of marijuana for sale *factually* determined to constitute moral turpitude in a bar disciplinary proceeding].)"

In *Comings v. State Bd. of Education, supra,* 23 Cal.App.3d 94, the *Morrison* reasoning was applied in a situation where two teachers, Comings and Jones, each had their teaching credentials revoked, in separate proceedings, after they were convicted of possession of marijuana. The appellate court concluded that the revocation of Comings' credentials was unsupported by a sufficient showing of his unfitness to teach and, like the *Morrison* situation, was improperly based upon an abstract

characterization of his conduct as immoral, unprofessional and involving moral turpitude, without any evidence of extenuating or aggravating circumstances, likelihood of recurrence, motivation or the other factors enumerated by the *Morrison* court. (*Id.,* at pp. 103-104.) As to the other petitioner, Jones, the court reached a contrary conclusion and held that his credentials were properly revoked based upon testimony that he had been rendered unfit to teach due to the notoriety of his involvement with marijuana and the resulting adverse effect upon the attitude of students and parents in the community. (*Id.,* at pp. 105-106.)

The cases herein cited at length are illustrative of what has been called the protean concept of moral turpitude. Clearly in the matter at bench those factual determinations necessary to establish a rational nexus between the crime, the immoral conduct and the licensee's fitness to perform his licensed vocation have been met.

In *Brandt* v. *Fox, supra,* 90 Cal.App.3d 737, Brandt appealed from a judgment for a peremptory writ of mandate to compel the commissioner of the department of real estate to set aside his decision denying plaintiff a license to act as a real estate salesman. The record disclosed the plaintiff suffered a conviction for distribution of a controlled substance (cocaine). Applying the substantial evidence rule, the court reversed, stating it found no merit in the People's claim that conviction of any felony or crime involving moral turpitude, however unrelated to one's qualifications for a particular occupation, furnishes grounds for denial of a license.

The facts describing the conduct of the plaintiff are set out as follows: "A hearing was held before George Coan, an administrative law judge, who rendered a proposed decision finding that in October 1974, plaintiff had been convicted of a felony involving moral turpitude. He found that the circumstances leading to such conviction were that, while working as a bartender, plaintiff was asked by a customer if he would introduce him to another individual in the bar. Plaintiff, who was '*vaguely aware*' that narcotics might be involved, arranged the introduction, which took place at a house which was under observation by federal narcotics officers. Plaintiff was to receive $500 for making the introduction, which resulted in a sale of over 100 grams of a substance containing cocaine. However, plaintiff did not personally carry the contraband nor did he take part in the negotiations for its sale. Plaintiff pleaded guilty to the federal offense of distribution of a controlled substance, received a suspended sentence, and was fined $1,500 and placed

on probation for a period of three years." (*Brandt* v. *Fox, supra,* 90 Cal.App.3d at p., 740, italics added.)

The record also disclosed the plaintiff was contrite, cooperative and that this episode was a single event with drugs. This case on its facts is patently distinguishable from the matter before the court. Brandt's participation in the narcotics transaction was recognized by the court to be peripheral. His culpable conduct consisted entirely of making an introduction between two persons with some knowledge of the fact that the introduction might result in the sale of narcotics. He took no part in the actual sale, nor did he ever have any drugs in his possession. On the other hand, appellant herein was apprehended with 800 pounds of marijuana which he had smuggled into the United States from Mexico. The marijuana had a street value of one quarter of a million dollars. Appellant's culpability is unquestionably not equatable with that of Brandt. So too is the recent case of *Bremer* v. *Department of Motor Vehicles* (1979) 93 Cal.App.3d 358 [155 Cal.Rptr. 643]. The trial court ordered the issuance of a writ of mandamus directing the Department of Motor Vehicles to set aside its decision revoking a vehicle salesman's license. The salesman had been convicted of a violation of Penal Code section 647a (annoying or molesting a child), a crime of moral turpitude. The Court of Appeal affirmed, holding that a statute can constitutionally bar a person from practicing a lawful "profession" only for reasons related to his fitness or competence to practice the profession, and that in the present case there was no apparent connection between the business of selling cars and the salesman's conviction of child molesting. The requirement of a rational linkage, nexus between the crime, the immoral conduct and the licensee's fitness to perform the duties of his business or profession does give rise to different legal determinations because of the myriad of factual situations presented.

■ Appellant lastly complains that the Commissioner's failure to make a finding with respect to rehabilitation is error. This contention is also without merit. Appellant's involvement in the drug traffic was far from peripheral. There is evidence of rehabilitation and the same is reviewed hereinabove.

Appellant cites the findings of the administrative law judge in arguing that rehabilitation was conclusively established. Appellant fails to mention that the record establishes that the administrative law judge, after finding that appellant had been convicted of a felony and a crime involving moral turpitude, recommended to the Commissioner that a *re-*

*stricted* broker's license be issued to the appellant. Implicit in such recommendation is the administrative law judge's finding that appellant's evidence of rehabilitation was *not sufficient* to support appellant's retaining an unrestricted license.

The Commissioner could have adopted the proposed decision in its entirety, but he chose not to do so. Such a course of action is statutorily authorized under Government Code section 11517, subdivision (c): "If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence. . . ."

The statutory scheme under the Administrative Procedures Act contemplates that the Commissioner will have and exercise the final and ultimate responsibility for determining the degree of the sanction to be imposed. He is not mandated to accept the recommendation of the administrative law judge.

Appellant contends that the Commissioner is required by section 482, subdivision (b) to make a finding on rehabilitation. Section 482, however, provides in pertinent part: "Each board shall *take into account* all competent evidence of rehabilitation furnished by the applicant or licensee." (Italics added.)

The administrative record indicates that the administrative law judge and the Commissioner did take into consideration the evidence of rehabilitation introduced by appellant. Appellant's contention is, therefore, without merit. The degree of discipline is clearly within the discretion of the Commissioner. (§ 10177.) Cases hold that "the propriety of the penalty imposed by an administrative agency is a matter vested in the discretion of such agency, and that its decision thereon will not be disturbed unless there has been a clear abuse of discretion." (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 287, 291, [341 P.2d 296]. See also *Cadilla* v. *Board of Medical Examiners, supra,* 26 Cal.App.3d at p. 968.) The administrative law judge, after finding that appellant had "made substantial progress toward full rehabilitation," ordered appellant's license revoked. Thus, the tribunal most favorably disposed to appellant found nonetheless that the state of his rehabilitation did not warrant withholding discipline.

It should also be noted that appellant has no quarrel with the proposed decision. "[He] accepts the Proposed Decision and is prepared to

abide by its terms." Among its terms are the findings that the offense "is a crime involving moral turpitude," "that constitutes grounds for disciplinary action pursuant to provisions of Section 490," and that his rehabilitation does not prevent revocation of his license. What he really challenges, therefore, is the degree of penalty—a matter squarely within the Commissioner's discretion. Reasonable minds might differ as to the propriety of the penalty given; no abuse of discretion is shown. (See *Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293 [144 Cal.Rptr. 826].)

Judgment affirmed.

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 21, 1979.