[Civ. No. 18845. Fourth Dist., Div. One. Apr. 1, 1980.]

ROBERT T. THORPE, Plaintiff and Appellant, v.
BOARD OF EXAMINERS IN VETERINARY MEDICINE,
Defendant and Respondent.

**COUNSEL**

Daniel T. Broderick III for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Lawrence C. Kuperman, Deputy Attorney General, for Defendant and Respondent.

OPINION

GREER, J.*—Petitioner Robert T. Thorpe, D.V.M., appeals the denial of his petition for writ of mandate (Code Civ. Proc., § 1094.5) following the revocation of his license to practice veterinary medicine.

On May 21, 1977, after a plea of not guilty, Thorpe was convicted in the United States District Court of conspiring to import 12,000 pounds of marijuana in violation of 21 United States Code sections 952, 960 and 963, and with attempting to defraud American Motorists Insurance Company in violation of 18 United States Code section 1341. The basis of the mail fraud case was he applied for insurance for two boats and an outboard motor, reported them stolen and attempted to recover insurance benefits knowing the boats and motor had not been stolen.

On June 22, 1978, the Board of Examiners in Veterinary Medicine (Board) filed an accusation against Thorpe alleging he had violated Business and Professions Code sections 490 and 4882[1] and sought disciplinary action under Business and Professions Code section 4875. The administrative law judge heard the case and rendered a proposed decision the felonies involved moral turpitude, they related to the qualification, functions or duties of the practice of veterinary medicine and evidence of rehabilitation offered by Thorpe was insufficient to establish the public interest would be protected by the continuance of his license and proposed Thorpe's license be revoked. On October 18, 1978, the Board adopted the proposed decision and issued its decision and order revoking the license effective November 18, 1978.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Business and Professions Code section 4882 reads: "The board may revoke or suspend a certificate for any of the following causes:

"(a)  The employment of fraud, misrepresentation or deception in obtaining such license.

"(b)  Conviction of a crime involving moral turpitude or conviction of a felony, in which case the record of such conviction shall be conclusive evidence.

"(c)  Chronic inebriety or habitual use of drugs.

"(d)  For having professional connection with or lending one's name to any illegal practitioner of veterinary medicine and the various branches thereof.

Thorpe petitioned for a writ of mandate under Code of Civil Procedure section 1094.5 to set aside the Board's revocation of his license. After hearing in the superior court, exercising its independent judgment, the court denied the writ.

Section 4882, subdivision (b), in effect at the time of the alleged violation, reads as follows: "The board may revoke or suspend a certificate for any of the following causes:

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) Conviction of a crime involving moral turpitude or conviction of a felony, in which case the record of such conviction shall be conclusive evidence."

At the outset, we should put to rest the distinction between section 4882, subdivision (b), and the language of section 475, subdivision (c), which provides: "(c) A license shall not be denied, suspended, or revoked on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits." ▮ Conviction of a crime involving moral turpitude is based on different factors than the individual's character, reputation, personality or habits, and these sections are not in conflict. The former involves criminal conduct reprehensible in law, while the latter involves the attributes or traits which the community perceives in the individual and which may or may not involve criminal behavior.

---

"(e) Violation or attempting to violate, directly or indirectly, any of the provisions of this chapter.

"(f) The revocation by a sister state or territory of a license or certificate by virtue of which one is licensed to practice veterinary medicine in that state or territory.

"(g) Conviction of or cash compromise of a charge or violation of the Harrison Act, [fn. omitted] regulating narcotics, in which case the record of such conviction or compromise, as the case may be, shall be conclusive evidence.

"(h) Fraud or dishonesty in applying, treating, or reporting on tuberculin or other biological tests.

"(i) Employment of anyone but a veterinarian licensed in the State of California to demonstrate the use of biologics in the treatment of animals.

"(j) False or misleading advertising having for its purpose or intent deception or fraud.

"(k) Conduct reflecting unfavorably on the profession of veterinary medicine.

"(l) Conviction on a charge of cruelty to animals.

"(m) Failure to keep one's premises and all equipment therein in a clean and sanitary condition.

"(n) Fraud, deception, or incompetence in the practice of veterinary medicine."

The issue was addressed in *Brandt* v. *Fox* (1979) 90 Cal.App.3d 737, at page 743 [153 Cal.Rptr. 683], when the court stated: "Plaintiff's reliance upon subdivision (c) of section 475 is misplaced. The provision in question precludes denial of a license 'on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits.' Since criminal convictions are separately dealt with in subdivision (a)(2) of section 475, it is apparent that subdivision (c) was intended to apply to evidence of bad moral character *other* than criminal convictions. Any other construction of subdivision (c) would effectively nullify the provisions of subdivision (a)(2) of section 475 and thereby run afoul of the cardinal rule that a court is prohibited from a construction which will omit a portion of a statute; also, that a court is required to construe a statute so as to effectuate all of its provisions. [Citations.]"

■ Numerous decisions have held a statute can constitutionally bar a person from practicing a lawful profession only for reasons relating to his fitness or competence to practice that profession (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]). "Moral turpitude," "immoral" or "unprofessional" conduct must depend upon, and thus relate to, the occupation involved (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 227-228 [82 Cal.Rptr. 175, 461 P.2d 375]). The authority to deny, revoke or suspend a professional license does not contemplate an identical standard of probity should apply to the different professionals with their different duties, responsibilities and degree of contact with the public.

We are unable to find any authority which attempts to define the words as they may apply to veterinarians. We have no reluctance to draw an analogy to the medical profession generally and note that there are cases involving physicians who have had criminal prosecution for their alleged acts with controlled substances, namely marijuana (Health & Saf. Code, § 11054, subd. (d)(10)). Both of these professions have a responsibility to the state and to the public generally to handle designated controlled substances with the utmost care.[2] *Weissbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, at pages 928 to 929 [116 Cal.Rptr. 479], states: "The State of California has enacted an elaborate scheme for the regulation and control of narcotics and dan-

---

[2]Section 11240 of Health and Safety Code provides "[n]o veterinarian shall. . .furnish a controlled substance for himself or any other human being." Section 11054, subdivision (d)(10), lists marijuana as a controlled substance.

gerous drugs. The medical doctor is an integral part of this control and in fact is the key to its successful operation. The doctor in the scheme of things literally has the 'keys to the safe' and thus occupies a unique position in our society. It is the recognition of this fact that obviously led the Legislature to deny to the doctor the right to prescribe narcotics for himself or to enjoy the unlimited freedom of personal use.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"In his dealing with narcotics and dangerous drugs, there is more to be considered than just the doctor's ability to perform the skills required of his profession. He is, as we have said, a part of the regulatory machinery. Thus, the line of cases exemplified by *Morrison v. State, supra*, and the other cases relied upon by petitioner are not applicable here."[3]

While *Weissbuch* deals with "unprofessional conduct," certainly the willingness to violate the law which they are licensed to administer for the public good makes them unfit to serve (see *Morrison v. State Board of Education, supra*, 1 Cal.3d 214, 229, 233-234). ■ The smuggling of 12,000 pounds of illegal marijuana, a drug controlled by state as well as federal law, would constitute a crime involving moral turpitude as far as a veterinarian is concerned.

The facts of *Golde v. Fox* (1979) 98 Cal.App.3d 167 [159 Cal.Rptr. 864], are not dissimilar. In that case a real estate broker smuggled 1,000 pounds of marijuana into the United States using his private plane. His broker's license was revoked because of his conviction.

Observing a real estate broker often engages in confidential and fiduciary business relationships, the *Golde* court reasoned: "Honesty and truthfulness are two qualities deemed by the Legislature to bear on one's fitness and qualification to be a real estate licensee. If appellant's offense reflects unfavorably on his honesty, it may be said to be substantially related to his qualifications. [Citations.] Illegal possession and transportation by airplane with the attendant sophisticated planning of a quarter of a million dollars worth of marijuana, admittedly for the

---

[3]*Weissbuch* was reversed because the crime there was possession of small amounts of marijuana for personal use, which was decriminalized and, under *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], he should be given the benefit of the de minimus nature of his offense. This is far different from the magnitude of the Thorpe offense, a federal offense (cf., Health & Saf. Code, § 11354).

purpose of personal gain, is clearly an illicit act of deceit and dishonesty in a fundamental sense." (*Golde* v. *Fox, supra,* 98 Cal.App.3d 167, 176.) The *Golde* court went on to explain: "'Where the occupation is one wherein those following it act as the agents and representatives of others and in a more or less confidential and fiduciary capacity, it certainly can be fairly said that those pursuing it should have in a particular degree the qualifications of "honesty, truthfulness and good reputation." The occupation of a real estate agent is of just this sort. He acts for others and in more or less confidential and fiduciary capacity.'" (*Id.,* at p. 177.)

The conviction of the mail fraud charge also speaks to dishonesty and may also be a basis for the revocation.

Certainly the fact that a veterinarian takes his clients' animals, pets often as deeply revered as members of the family, puts him in a position of a bailee for hire and a fiduciary as far as the care and protection of this personalty is concerned. In handling this property of his clients, he owes a deep and abiding obligation of honesty and integrity as to his treatment and their care.

Judgment affirmed.

Staniforth, Acting P. J., and Wiener, J., concurred.

A petition for a rehearing was denied April 24, 1980, and appellant's petition for a hearing by the Supreme Court was denied May 28, 1980.