Filed 12/17/18; Certified for Publication 1/14/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARLIE RICASA, | D071088 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2016-00010146-CU-WM-CTL) |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant; | |
| SOUTHWESTERN COMMUNITY COLLEGE DISTRICT GOVERNING BOARD et al., | |
| Real Parties in Interest and Respondents. | |
| ARLIE RICASA, | D071122 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2015-00025984-CU-WM-CTL) |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant; | |
| SOUTHWESTERN COMMUNITY COLLEGE DISTRICT GOVERNING BOARD et al., | |
| Real Parties in Interest and Appellants. | |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge. Affirmed as modified.

Dinsmore & Shohl and Adriana Cara for Plaintiff and Appellant.

No appearance for Defendant Office of Administrative Hearings.

Lozano Smith, Mark W. Waterman and Mark K. Kitabayashi for Respondents, Appellants and Real Parties in Interest Southwestern Community College District Governing Board and Southwestern Community College District.

Southwestern Community College District (District) and its governing board (Board) (together Southwestern) demoted Arlie Ricasa from an academic administrator position to a faculty position on the grounds of moral turpitude, immoral conduct, and unfitness to serve in her then-current role. Ricasa filed two petitions for writs of administrative mandamus in the trial court seeking, among other things, to set aside the demotion and reinstate her as an academic administrator.

Ricasa appeals from the denial of her petitions, arguing the demotion occurred in violation of the Ralph M. Brown Act (the Brown Act) (Gov. Code, § 54950 et seq.) because Southwestern failed to provide her with 24 hours' notice of the hearing at which it heard charges against her, as required by Government Code section 54957. Assuming we reject her first argument, she argues that the demotion was unconstitutional because no nexus exists between her alleged misconduct and her fitness to serve as academic administrator.

Southwestern also appeals, arguing that the trial court made two legal errors when it: (1) held that Southwestern was required to give 24-hour notice under the Brown Act

2

prior to conducting a closed session at which it voted to initiate disciplinary proceedings, and (2) enjoined Southwestern from committing future Brown Act violations.

We conclude that Southwestern did not violate the Brown Act and that substantial evidence supported Ricasa's demotion. However, we reverse that part of the judgment enjoining Southwestern from future Brown Act violations.

FACTUAL AND PROCEDURAL BACKGROUND

*Introduction*

In 1990 Ricasa started working at Southwestern as a tenured faculty counselor. After about 10 years in this position she served as the interim dean until she was selected to serve as Southwestern's director of Student Development and Health Services (DSD), an academic administrator position. As the DSD, Ricasa acted as an advisor to the elected student government, working directly with student leaders and conducting leadership training. Ricasa understood that this position required her, among other things, to avoid any conflicts of interest, refrain from using District time and equipment for non-District activities, act within the law, and not use the position to benefit herself. In 2008 Ricasa's supervisor evaluated her as "extremely competent" in her position.

In 2013 Ricasa worked under a written "Academic Administrator Employment Agreement" (Agreement) that provided for a 12-month nonrenewable position, terminating on June 30, 2015. The terms and conditions of her employment were set forth in an "Academic Administrator Handbook" (the Handbook).

While employed by Southwestern as the DSD, Ricasa also served as an elected board member of a separate entity, the Sweetwater Union High School District (SUHSD).

3

SUHSD and Southwestern are both large educational institutions in the South Bay area of San Diego. The District and SUHSD work together to promote higher education and have overlapping contractors and employees, such as Ricasa. The largest number of incoming District students were from SUHSD, and the community viewed the school districts as having significant ties.

Ricasa's position at SUHSD required her to complete an annual Statement of Economic Interest Form 700 (Form 700). As a SUHSD board member, Ricasa voted on million-dollar vendor contracts to construction companies, such as Seville Group, Inc. (SGI) and Gilbane Construction Company, who ultimately co-managed a bond project for the SUHSD. Before and after SGI received this contract, Ricasa went to dinners with SGI members that she did not disclose on her Form 700. Ricasa's daughter also received a scholarship from SGI to attend a student leadership conference that Ricasa did not report on her Form 700. In July 2009, during business hours at Southwestern, she faxed two notes to Rene Flores, an SGI member, confirming the amount ($1,800) necessary for her daughter to attend a conference and thanking him for the money.

*Charges and Guilty Plea*

In January 2012 the district attorney filed about 30 charges against Ricasa for bribery and corruption. After charges were filed against Ricasa, Southwestern placed her on nondisciplinary paid administrative leave. In June 2012 Ricasa returned to work as the director of Extended Opportunity Programs, another academic administrator position. Ricasa suffered no change in her compensation or benefits, but was "subject to prospective compensation adjustments negotiated with all employee groups."

4

Other individuals from the SUHSD were also charged. The press labeled the criminal matter as the " 'South Bay pay for play scandal' " and the "South Bay Corruption Scandal." In December 2013 Ricasa pleaded guilty to one misdemeanor count of violating the Political Reform Act (Gov. Code, § 89503), which prohibits board members of local agencies from receiving gifts from a single source in excess of $420. Her guilty plea provided:

> "I now plead Guilty/No Contest and admit the charges, convictions, and violations of probation described in Paragraph #1, above, because I am guilty. I admit that on the dates charged, . . .
>
> "i. I received, reviewed, understood, and biannually voted on Sweetwater's Conflict of Interest Code delineating the Form 700 reporting requirements sent to Sweetwater Board by the Superintendent.
>
> "ii. In 2009, I was elected School Board member for the [SUHSD]. I accepted gifts from Rene Flores (SGI) in 2009 worth a value of $2,099 and did not report them.
>
> "iii. The maximum contribution one may lawfully receive from one source per year is $420. Rene Flores provided these gifts with the intent to influence my vote on business awarded to Seville Group, Inc."

Ricasa resigned her SUHSD board position as part of her guilty plea.

*Ricasa's Demotion*

In February 2014 Southwestern delivered to Ricasa a document entitled "Notice of Charges and Recommendation for Termination of Academic Administrator Agreement and Demotion to Faculty Position" (the Original Charges), along with a letter indicating that a " 'Skelly' " meeting had been scheduled and that Southwestern was considering a

recommendation to terminate her Agreement and demote her to a faculty position.[1]

Later that month, Ricasa and her counsel met with a "Skelly officer" to conduct a predisciplinary *Skelly* meeting.  In March 2014 Southwestern delivered a letter, along with an amended notice of charges (the Amended Charges).  The Amended Charges notified Ricasa that under Education Code[2] section 87669 her demotion could take place immediately upon service of the Amended Charges.  Ricasa submitted a written response to the Amended Charges.

In April 2014 Southwestern responded to Ricasa's arguments, but concluded that the "totality of the circumstances establish a reasonable basis for the District to conclude that [Ricasa's] conduct may justify discipline based upon Section 87732."  The District's president and superintendent, Dr. Melinda Nish, agreed with the demotion recommendation and the matter was placed on the Board's agenda for closed session on May 7, 2014 (the May meeting) to address "Public Employee Discipline/Dismissal/Release."

Two days later, as required by section 87672, Ricasa received the Board's decision advising her that she was being disciplined under sections 87671 and 87732, demoted to

---

[1]     Some public employment arrangements confer to certain public employees a property interest in their jobs.  (See *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 206-207 (*Skelly*).)  In such cases, "the state must comply with procedural due process requirements before it may deprive its permanent employee of this property interest by punitive action."  (*Id.* at p. 208.)  A so-called *Skelly* pre-termination hearing requires, at a minimum, "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."  (*Id.* at p. 215.)

[2]     Undesignated statutory references are to the Education Code.

the faculty position of academic counselor "effective immediately," that she had a right under section 87673 to object and request a hearing, and that the written charges against her were attached. Thereafter, Southwestern conducted a noticed meeting at which several individuals addressed the Board in open session regarding Ricasa's demotion. At this meeting the Board voted to demote Ricasa. In June Ricasa requested a hearing to appeal the decision.

Additionally, in December 2014, the District notified Ricasa that her contract for her administrative position, which expired on June 30, 2015, would not be renewed. Ricasa remains employed by the District as an academic counselor.

*The Administrative Hearing*

An administrative law judge (ALJ) from the Office of Administrative Hearings (OAH) conducted an evidentiary hearing regarding Ricasa's discipline and later issued a 38-page decision upholding Southwestern's decision to demote Ricasa. The ALJ concluded that a "preponderance of the evidence established that Ms. Ricasa engaged in immoral conduct in violation of [] section 87732, subdivision (a)," "is evidently unfit for service as an academic administrator in violation of [] section 87732, subdivision (d)," and "was convicted of a crime of moral turpitude in violation of [] section 87732, subdivision (g)."

*The Instant Actions*

Before the ALJ rendered her decision, Ricasa filed a petition for writ of mandamus against Southwestern alleging violations of the Brown Act (Brown Act Petition). She first alleged that, based on Southwestern's position that the May meeting did not

7

constitute a violation of the Brown Act, it is likely that Southwestern will continue to violate the Brown Act's open meeting requirement in the future. She next alleged that Southwestern was required to report the action taken at the May meeting under the Brown Act, but failed to do so. She claimed that Southwestern failed to acknowledge this violation and it is likely that Southwestern will continue to violate this requirement in the future. She sought to enjoin these future violations of the Brown Act.

After the ALJ's decision, Ricasa filed a second petition seeking a writ of mandate under Code of Civil Procedure section 1094.5 for relief from the OAH's final decision and incidental damages. She sought to set the ALJ's decision aside alleging, among other things, that the evidence did not support the ALJ's findings.

*The Trial Court's Ruling*

The trial court issued a joint order on both petitions. The court ruled in favor of Southwestern on the merits of Ricasa's demotion, finding that the evidence supported the ALJ's decision regarding the demotion. The court also ruled that the ALJ did not abuse her discretion or fail to proceed in a manner required by law. The court found that substantial evidence supported upholding the decision to demote Ricasa. It agreed with the ALJ's decision to terminate Ricasa's Agreement and demote her to the faculty position of academic counselor.

As to Ricasa's Brown Act claims that Southwestern was required, but failed, to give 24-hour notice under Government Code section 54957 prior to the May meeting, the court found that Southwestern was obligated to provide 24-hour notice prior to the May meeting. Nonetheless, it concluded that this claim for a past violation of the Brown Act

8

was barred because Ricasa did not timely submit the required cease and desist letter under Government Code section 54960.2. The court entered judgment in favor of Southwestern on Ricasa's claim for a past violation of the Brown Act.

To the extent Ricasa sought to prevent future violations of the Brown Act, the court granted Ricasa's petition. Accordingly, the court issued a peremptory writ of mandate enjoining Southwestern "from holding closed session meetings on specific complaints or charges brought against an employee by another person or employee unless the employee has been given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice was delivered to the employee personally or by mail at least 24 hours before the time for holding the session" as required by Government Code section 54957, subdivision (b)(2).

*The Appeals*

Both parties appealed. Southwestern contends that the Education Code provided a mechanism by which a community college may discipline an employee by giving the employee notice of charges against her and the right to dispute those charges in a full evidentiary hearing before a neutral ALJ. Accordingly, it asserts the trial court erred in concluding that Ricasa was entitled to 24-hour notice in advance of the May meeting under the Brown Act.

Southwestern also argues that, under California law, a future violation under the Brown Act occurs only when a public entity engages in a longstanding continued practice, not when it undertakes a one-time event based on specific circumstances. Accordingly, it asserts that its one-time decision to discipline Ricasa under the Education

9

Code based on her specific admissions in her criminal conviction does not constitute a future violation of the Brown Act and that the trial court erred in enjoining future Brown Act violations.

Ricasa contends that the trial court erred as a matter of law when it held that her Brown Act claim was time-barred as to past actions because the Brown Act's cure provisions do not apply to a Government Code section 54957 violation. She also asserts that the court's upholding of her demotion must be reversed because no evidence establishes her unfitness to serve as an academic administrator.

### DISCUSSION

This action involves the interplay between the Education Code and the Brown Act. Accordingly, we start our analysis with a review of the relevant statutory provisions. We then explain why we agree with Southwestern that Ricasa was not entitled to 24-hour advance notice of the May meeting under the Brown Act. This decision renders moot Ricasa's argument that the trial court erred as a matter of law when it held that her Brown Act claim was time-barred as to past actions because she did not comply with the cure provisions in Government Code section 54960.2. Accordingly, we express no opinion on this issue.

We also agree with Southwestern that the court improperly enjoined Southwestern from committing future violations of the Brown Act. Finally, we reject Ricasa's arguments and conclude that the court did not err in upholding her demotion.

10

## I. *THE EDUCATION CODE*

The terms and conditions of employment for community college employees are governed by a comprehensive statutory scheme set forth in the Education Code. (§ 87660 et seq. [governing "the evaluation of, the dismissal of, and the imposition of penalties on, community college faculty"].) Contract or regular employees "may be dismissed or penalized for one or more of the grounds set forth in Section 87732." (§ 87667.) "A 'regular' employee is . . . one who has achieved tenure. 'Contract' status is the first step toward tenure." (*McGuire v. Governing Board* (1984) 161 Cal.App.3d 871, 874.) Section 87732 provides multiple independent bases upon which an employer may take action against an employee, including: immoral or unprofessional conduct, evident unfitness for service, and conviction of a felony or of any crime involving moral turpitude. (§ 87732, subds. (a), (d), (g).)

The governing board determines whether an employee is to be dismissed or penalized and whether the dismissal or penalty shall be imposed immediately or postponed. (§ 87669.) The employee "may be dismissed or penalized if one or more of the grounds set forth in Section 87732 are present and the following are satisfied: [¶] (a) The employee has been evaluated in accordance with standards and procedures established in accordance with the provisions of this article. [¶] (b) The district governing board has received all statements of evaluation which considered the events for which dismissal or penalties may be imposed. [¶] (c) The district governing board has received recommendations of the superintendent of the district and, if the employee is working for a community college, the recommendations of the president of that

11

community college.  [¶] (d) The district governing board has considered the statements of evaluation and the recommendations in a lawful meeting of the board."  (§ 87671.)

"If governing board decides it intends to dismiss or penalize a contract or regular employee, it shall deliver a written statement, duly signed and verified, to the employee setting forth the complete and precise decision of the governing board and the reasons therefor."  (§ 87672.)  The employee then has 30 days to object to the governing board's decision.  (§ 87673.)

If the parties do not agree to an arbitrator (§ 87674), then the governing board must certify the matter to the OAH.  (§ 87678.)  An ALJ conducts proceedings "in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code."  (§ 87679.)  "The written notice delivered to the employee pursuant to Section 87672 shall be deemed an accusation.  The written objection of the employee delivered pursuant to Section 87673 shall be deemed the notice of defense."  (§ 87679.)

The ALJ must determine whether cause exists to dismiss or penalize the employee and whether to dismiss or penalize the employee.  (§ 87680.)  The governing board or the employee may petition the court for review of the ALJ's decision.  (§ 87682.)

## II.  *THE BROWN ACT*

The Brown Act requires that school district board meetings be open to the public. (Gov. Code, §§ 54951 & 54953; *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 95 (*Fischer*).)  Closed sessions may only be conducted if authorized by statute.  (Gov. Code, § 54962.)  One such statutory authorization is Government Code

section 54957, known as the "personnel exception," which is designed to permit the free and candid discussion of personnel matters by a local governmental body and to protect the employee from public embarrassment.  (*Fischer*, at p. 96.)

Specifically, the personnel exception allows a local agency to hold a closed session hearing "to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee or to hear complaints or charges brought against the employee by another person or employee unless the employee requests a public session."  (Gov. Code, § 54957, subd. (b)(1).)  The agenda for a closed session regarding a public employee discipline matter merely has to state:  "PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE."  (Gov. Code, § 54954.5, subd. (e).)  But, "[a]s a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session.  If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void."  (Gov. Code, § 54957, subd. (b)(2).)[3]

---

[3]     We sometimes refer to the 24-hour notice requirement of Government Code section 54957, subdivision (b)(2) as the "24-hour rule."

13

### III. *NO PAST VIOLATION OF THE BROWN ACT OCCURRED*

The trial court held that the Board's May meeting violated the Brown Act because Southwestern failed to comply with the 24-hour rule. The court found that the following facts supported Ricasa's argument: "1) there was an hour long closed meeting and the decision was not announced at the reconvened session; 2) there were multiple exhibits attached to the charging document; 3) [Dr.] Nish could be considered a charging party, in addition to her role as secretary; and 4) most importantly, [Ricasa] was disciplined immediately."

Southwestern contends the trial court erred in concluding that Ricasa was entitled to 24-hour notice in advance of the May meeting under the Brown Act. Because resolution of this issue requires us to interpret the Education Code and the Brown Act, our review is de novo. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)

We begin our analysis by reviewing the actions Southwestern took and conclude that Southwestern's actions complied with its obligations under the Education Code. We then explain that Southwestern's actions did not violate the Brown Act because the personnel exception to the Brown Act applied to the May meeting.

#### A. *Southwestern's Actions Complied with the Education Code*

Ricasa is a community college employee. Under the Handbook, when Ricasa advanced to an administrative position she retained her classification as a tenured faculty member. Section 87660 et seq. governs ". . . the imposition of penalties on[] community

14

college faculty." These Education Code provisions apply to Ricasa as a tenured faculty member. (§ 72411.5.)

Southwestern provided Ricasa with a predisciplinary notice of charges and recommendation that she be demoted. This notice informed her that a *Skelly* hearing had been scheduled. Ricasa participated in the *Skelly* hearing with her counsel. Southwestern delivered a letter and the Amended Charges to Ricasa. The letter informed her that she would have the "opportunity to respond to the Amended Charges before a final decision is made . . . ." The Amended Charges informed her that under section 87669, which allowed the Board to impose an immediate penalty, her demotion could take place immediately upon service of the Amended Charges. Ricasa submitted a written response to the Amended Charges.

Ricasa then received notice of the next steps required by the Education Code. First, as required by section 87671, Dr. Nish would present a recommendation to the Board at a Board meeting, along with a copy of Ricasa's performance evaluations issued since the 2009-2010 academic year, the Amended Charges, Ricasa's written response to the Amended Charges, and the *Skelly* decision. After the meeting, as required by section 87672, Ricasa might be served with a notice of disciplinary action. As required by section 87673, Ricasa would have 30 days to file a written objection. As contemplated by sections 87674 and 87678, Ricasa and the District would then select an arbitrator or choose to have the matter heard by an ALJ.

Specifically, as a prerequisite to a full evidentiary hearing before an ALJ, section 87671 required that the Board consider Ricasa's "statements of evaluation and the

15

recommendations [of the president of that community college] in a lawful meeting of the board." (§ 87671, subd. (d), (c).) Thus, section 87671 required that the Board hold the May meeting before it could demote Ricasa.

After the May meeting, if the Board decided to penalize Ricasa, it was statutorily mandated to "deliver a written statement, duly signed and verified, to the employee setting forth the complete and precise decision of the governing board and the reasons therefor." (§ 87672.) The Board decided to demote Ricasa immediately and delivered the verified statement to Ricasa. Section 87669 allowed the Board to impose an immediate penalty, such as a demotion.

As this review shows, three of the facts the trial court relied on in finding that a hearing occurred on specific complaints or charges were either statutorily mandated or permitted under the Education Code. Section 87669 allowed the Board to impose an immediate penalty. Section 87671 required that Dr. Nish, the District's president and superintendent, present her recommendation to the Board at a Board meeting, along with copies of specified documents.

The other facts relied on by the trial court, the length of time the Board took in closed session, and that a decision was not announced at the reconvened session do not support its conclusion that a hearing occurred. Ricasa cited no authority, and we are aware of none, supporting an assertion that the amount of time spent in closed section, or the lack of an announcement, are relevant to determining whether a violation of the 24-hour rule occurred.

16

B. *The May Meeting Fell Within the Personnel Exception*

Having found that Southwestern's actions complied with its statutory obligations under the Education Code, we next address whether the Board "*consider*[*ed*] the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee" (Gov. Code, § 54957, subd. (b)(1), italics added) at the May meeting, or whether the Board "*hear*[*d*] complaints or charges brought against the employee by another person or employee." (*Ibid*., italics added.) In the former instance, the personnel exception applied and Ricasa did not have the right to 24-hour notice, while in the latter instance she had this right. (*Id.* at subd. (b)(2); *Fischer*, *supra*, 70 Cal.App.4th at p. 96.)

What occurred during the May meeting presents a disputed factual question. Accordingly, we review this issue under the substantial evidence standard of review. Under this standard, we resolve all conflicts in evidence in favor of the prevailing party and indulge all legitimate inferences to uphold the judgment if possible. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

"A 'hearing' is '[a] proceeding of relative formality . . . , generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented.' " (*Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568, 574.) In contrast, "[t]o 'consider' is to 'deliberate upon[.]' " (*Ibid.*)

Here, the agenda for the May meeting complied with Government Code section 54954.5, subdivision (e), regarding how the agenda must identify an employee discipline matter that will be considered in closed session. In an attempt to bring the May meeting within the 24-hour notice requirement of Government Code section 54957, Ricasa

17

contends that Dr. Nish's presentation of the Amended Charges to the Board at the May meeting constituted "specific complaints or charges brought against an employee by another person or employee." (Gov. Code, § 54957, subd. (b)(2).) To support this contention, she cited to a portion of a declaration by Board member Tim Nader. However, a full reading of Nader's declaration shows that the Board did not receive evidence or testimony from any percipient witness, nor did it hear from a third party about any claims against Ricasa:

> "On May 7, 2014, the District's Board met in closed session to initiate the process of demoting Petitioner from her administrative position of Director of Extended Opportunity Programs to a staff position as academic counselor. The initiation of this process was directly related to Petitioner's December 18, 2013 guilty plea, where she pled guilty to a misdemeanor violation of Government Code section 89503. The Board did not conduct any type of hearing regarding Petitioner.

> "At the May 7, 2014 closed session, neither I nor any of the Board members received evidence and at most considered whether Petitioner's guilty plea and underlying conduct, as presented by the District's President Dr. Melinda Nish, justified disciplinary action. Again, the District's Board did not conduct any type of evidentiary hearing. I have always understood that Petitioner has a legal right to an evidentiary hearing on her discipline in accordance with the Education Code. In fact, it is my understanding that Petitioner did request, and was a party to, a four day administrative hearing before an Administrative Law Judge in August 2015."

The evidence shows that Dr. Nish presented her recommendation to the Board along with all the documentation required by the Education Code. (§ 87671, subd. (b), (c), (d).) Dr. Nish testified that "closed-session deliberation" occurred at the May meeting. Ricasa cited nothing in the record showing that Dr. Nish was a percipient witness to Ricasa's misconduct. Moreover, the charges considered by the Board is a

18

pleading, based on information and belief, not a piece of evidence. (*Kolter v. Commission on Professional Competence* (2009) 170 Cal.App.4th 1346, 1352 (*Kolter*) [governing board does not conduct evidentiary hearing in deciding whether to approve or reject a statement of charges].)

If we were to accept Ricasa's argument, a hearing of "specific complaints or charges brought against an employee by another person or employee" within the meaning of Government Code section 54957, subdivision (b)(2) would occur anytime the superintendent of the district or president of a community college presents a disciplinary recommendation during a lawful meeting of the governing board as required by Education Code sections 87669 and 87671. Such an interpretation would eviscerate the personnel exception by preventing the governing boards of community colleges from engaging in the type of "free and candid" discussions that the Legislature has deemed necessary for them to manage their personnel. (*Fischer*, *supra*, 70 Cal.App.4th at p. 96.) The plain language of Government Code section 54957 allowed the Board to consider public employee discipline in closed section. This is what occurred here.

The parties analogize the instant matter with other cases addressing alleged Brown Act violations, specifically *Kolter*, *supra*, 170 Cal.App.4th 1346 and *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672 (*Bell*).

Southwestern contends that *Kolter*, *supra*, 170 Cal.App.4th 1346 is "[o]n point" and "dispositive" on the issue whether the 24-hour rule applies here. While the process utilized in *Kolter* is similar to the process utilized here, the statutory scheme in *Kolter* distinguishes this case. In *Kolter*, a school board initiated dismissal proceedings against a

19

certified teacher under section 44934 which requires that the board either consider filed written charges or formulate written charges, and allows the employee to request a hearing on the charges by a separate commission. (*Kolter*, at p. 1349; §§ 44934, subd. (b), 44944, subd. (a), (c)(1).) Under this statutory scheme, the personnel exception to the Brown Act applied and 24-hour written notice was not required because the "board did not conduct an evidentiary hearing on the verified statement of charges against [the teacher]; rather, it considered whether those charges justified the initiation of dismissal proceedings under [] section 44944." (*Kolter*, at p. 1352.) Here, unlike *Kolter*, the Board makes a disciplinary decision in the first instance and can immediately penalize or dismiss an employee. (§ 87669.) Thus, *Kolter* is not dispositive.

Ricasa relies on *Bell*, *supra*, 82 Cal.App.4th 672 for the proposition that the 24-hour rule applied. While *Bell* has significant factual parallels to the matter before us, we find it distinguishable. In *Bell*, the issue was whether a board of trustees violated the 24-hour rule when it met in closed session to discuss the potential disciplining of a teacher who also coached the football team. (*Bell*, at pp. 678-679.) The appellate court identified the issue as whether the proceedings consisted of hearing "complaints or charges" against the teacher, as that term is used in Government Code section 54957, subdivision (b). (*Bell*, at p. 682.) The appellate court defined the phrase "complaints or charges" as an accusation, something that is " 'brought against' " an employee by another person or employee, but excluded negative comments in an employee's performance evaluation from this definition. (*Id.* at p. 683.) On the facts of that case, the *Bell* court concluded that the employee was entitled to 24-hour notice because prior findings by a

20

panel became the basis for a "complaint" or "charge" that the board of trustees later considered at its meeting. (*Id.* at pp. 679, 683.) Under these facts, the teacher should have been afforded the opportunity to respond to the accusations against him before the board of trustees decided his discipline. (*Id.* at pp. 683-684.)

Here, unlike *Bell*, *supra*, 82 Cal.App.4th 672, the Board did not conduct an evidentiary hearing when it met in closed session; rather, it debated whether the facts established by Ricasa's guilty plea constituted a sufficient basis for discipline. The Board did not resolve a factual dispute that required a response from Ricasa, but instead debated whether the undisputed facts warranted discipline. Accordingly, because the Board did not consider a complaint or charge, the 24-hour rule did not apply.[4]

In a final attempt to avoid a conclusion that the May meeting fell under the personnel exception of Government Code section 54957, Ricasa argues that Southwestern waived the ability to present argument on the interaction between the Education Code and the Brown Act by failing to raise the Education Code below. We reject this argument because the record shows that the Education Code was the basis for Southwestern's disciplinary action against Ricasa. Southwestern also relied on the Education Code in arguing to the trial court why the 24-hour rule did not apply.

---

[4]    Ricasa's reliance on *Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860 (*Housing Authority*) and *Moreno v. City of King* (2005) 127 Cal.App.4th 17 (*Moreno*) is likewise misplaced. In these cases, the governing body in closed session heard "complaints or charges" against an employee as that term is used in Government Code section 54957, subdivision (b). (*Morrison*, at pp. 872-875; *Moreno*, at pp. 28-29.)

21

Southwestern asserts that, under California law, a future violation under the Brown Act occurs only when a public entity engages in a longstanding continued practice, not when it undertakes a one-time event based on specific circumstances. Accordingly, it argues that the trial court erred in enjoining future Brown Act violations.

Ricasa's Brown Act Petition sought declaratory and injunctive relief, praying for an order that the Board "refrain from holding closed session meetings unless specifically authorized by the Brown Act." Ricasa contends that, based on Southwestern's instant violation of the Brown Act, it is reasonable to conclude that the Board will continue to engage in this improper conduct in the future. Accordingly, she asserts the trial court did not err in granting the writ for this purpose.

The Brown Act provides that an action for declaratory relief may be brought to, among other things, "determine the applicability of this chapter to actions or threatened future actions of the legislative body . . . ." (Gov. Code, § 54960, subd. (a).) "Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497.) "[T]he Brown Act [also] authorizes injunctive relief that is based on, in relevant part, a showing of 'past actions and violations that are related to present or future ones' " (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917, italics omitted), and therefore the trial court may enjoin "future such actions and violations." (*Ibid.*)

In *Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146 we analyzed what constituted a future violation of the Brown Act. We

22

concluded that "the City's continued adherence to a long-standing ordinance providing for one nonagenda public comment period over the course of its two-day regular weekly meetings constitute[d] an ongoing or threatened future action, not a past action." (*Center for Local Government Accountability,* at pp. 1150-1151.) We noted that the adoption of the ordinance did not have a one-time effect, but applied "to every regular weekly meeting but for the City's postlitigation enactment of another ordinance altering the City's practice." (*Id*. at p. 1156.)

Here, in contrast, Southwestern did not violate the Brown Act in handling Ricasa's demotion. Moreover, Ricasa has not presented evidence showing that Southwestern has ever violated the Brown Act. Under these circumstances, the trial court erred in issuing a writ to enjoin future Brown Act violations. Accordingly, we order the judgment modified to reverse the writ enjoining future Brown Act violations.

## V.  *COURT DID NOT ERR IN UPHOLDING RICASA'S DEMOTION*

### A.  *General Legal Principles*

The Education Code governs the evaluation and discipline of community college faculty (§ 87660) and establishes procedures to be followed in penalizing a contract or regular employee. (§ 87666.) The governing board of a community college district has the authority to determine whether a contract or regular employee is to be penalized and the nature of those penalties. (§ 87669.) The governing board may penalize a regular or contract employee for one of eight specific causes. (§§ 87667, 87671.) As relevant here, these causes include "[i]mmoral or unprofessional conduct," "[e]vident unfitness for

23

service," and "[c]onviction of a felony or of any crime involving moral turpitude." (§§ 87671, 87732, subd. (a), (d), (g).)

" 'The term "immoral" has been defined generally as that which is hostile to the welfare of the general public and contrary to good morals. Immorality has not been confined to sexual matters, but includes conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as willful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community, and as an inconsiderate attitude toward good order and the public welfare.' " (*Board of Education v. Weiland* (1960) 179 Cal.App.2d 808, 811.)

" '[E]vident unfitness for service' connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district." (*Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1444 [addressing § 44932, subd. (a)(5)].) It means " 'clearly not fit, not adapted to or unsuitable . . . ordinarily by reasons of temperamental defects or inadequacies.' " (*Ibid.*) " 'Unprofessional conduct' is, as it were, often a lesser included form of proscribed behavior within 'evident unfitness for service.' Thus, conduct constituting 'evident unfitness for service' will often constitute 'unprofessional conduct.' But the converse is not true. 'Evident unfitness for service' requires that unfitness for service be attributable to a defect in temperament—a requirement not necessary for a finding of 'unprofessional conduct.' " (*Id.* at p. 1445.)

" ' "Moral turpitude" is . . . "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to

24

the accepted and customary rule of right and duty between man and man." [Citations.] Moral turpitude has also been described as any crime or misconduct committed without excuse [citations], or as any "dishonest or immoral" act, not necessarily a crime.' " (*Golde v. Fox* (1979) 98 Cal.App.3d 167, 181.) "[M]oral turpitude is inherent in crimes involving fraudulent intent, intentional dishonesty for purposes of personal gain or other corrupt purpose." (*Id.* at p. 185.)

The trial court reviews an administrative decision under the independent judgment standard of review. (§ 87682.) "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).) We review the trial court's determination under the substantial evidence test. (*Id.* at p. 824.)

The question before us "is whether the evidence reveals substantial support— contradicted or uncontradicted—for the trial court's conclusion that the weight of the evidence supports the [administrative agency's] findings of fact." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1078.) We do "not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor." (*Ibid.*) "When more than one inference can be reasonably deduced from the facts, [we] cannot substitute [our] deductions for those of the [trial] court." (*Pasadena Unified School Dist. v. Commission on Professional Competence*

25

(1977) 20 Cal.3d 309, 314.) If "substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed." (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 697.)

B. *Analysis*

The ALJ concluded that Ricasa engaged in immoral conduct, was evidently unfit for service as an academic administrator, and had been convicted of a crime involving moral turpitude. After reviewing the evidence in the administrative record, the trial court found substantial evidence supported the conclusion that Ricasa had engaged in immoral conduct and agreed with Southwestern's decision to demote her. The trial court cited three paragraphs in the ALJ's decision that addressed the evidence.

As a preliminary matter, Ricasa complains that the trial court merely copied and pasted three paragraphs of the ALJ's decision upholding her demotion and failed to provide a reasoned and factually supported decision. Ricasa, however, does not contend that she requested a statement of decision under Code of Civil Procedure section 632 and our review of the record does not show that she requested one. "It is . . . well established that Code of Civil Procedure section 632 applies to administrative mandamus proceedings in which the trial court exercises its independent judgment in reviewing the record." (*Cooper v. Kizer* (1991) 230 Cal.App.3d 1291, 1301.) Where, as here, an appellant fails to make a timely request for a statement of decision, we must infer any finding to uphold the judgment that is supported by substantial evidence in the administrative record. (Code Civ. Proc., §§ 632, 634; *Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 198-199.) Additionally, the court correctly identified the independent

26

judgment standard in its ruling. Because there was no request for a statement of decision and the court prepared none, we presume the court exercised its independent judgment. (See *Fukuda*, *supra*, 20 Cal.4th at p. 812 ["[F]indings by the trial court [having] been waived, . . . '[i]t must be conclusively presumed on this appeal that *the trial court weighed the evidence giving due weight to the presumption in favor of the board's findings, but nevertheless, exercising its independent judgment,*' " reached its finding.].)

Ricasa contends that substantial evidence does not support the trial court's findings that she engaged in acts of moral turpitude, immoral conduct, or was evidently unfit for service as an academic administrator because no connection existed between her alleged conduct and her ability to carry out her job duties as an academic administrator. As we shall discuss, the evidence presented at the administrative hearing supports a finding that Ricasa engaged in "[i]mmoral or unprofessional conduct," which constituted grounds for her penalty demotion under section 87732, subdivision (a). (§ 87667.)

Before SGI was awarded a bond contract worth over a million dollars, Ricasa accepted a dinner from Flores, the owner of SGI. Ricasa did not report this meal on her Form 700 and she voted on SGI's contract when it came before the SUHSD board. After the SUHSD board awarded SGI the contract, Ricasa accepted meals from SGI members and did not report these meals on her Form 700.

Ricasa also solicited money for her daughter from Flores "on [her] own time." She admitted, however, sending facsimile documents to Flores and using Southwestern equipment during business hours regarding her daughter's trip, including thanking him for the money. Ricasa believed that the money did not benefit her "personally as an

27

individual" because it would be used for her daughter. It was only after her conviction that she learned the money would be construed as benefiting her or a family member. She pleaded guilty to a misdemeanor count of violating the Political Reform Act by accepting gifts from Flores valued at $2,099 without reporting them. Ricasa agreed that the South Bay corruption scandal received a lot of negative media coverage for both Southwestern and SUHSD and that her name was mentioned as part of the scandal. She also agreed that local newspapers named her as a convicted defendant while the corruption scandal was ongoing, that she was named as a Southwestern administrator in media coverage and that the scandal cast a doubt on her ability to be a good role model for students.

Ricasa understood that as a board member for the SUHSD she acted as a fiduciary for SUHSD. She stated that her board membership with SUHSD required that she sign a one-page conflict of interest form; however, she did not know that a larger conflict of interest code existed until after charges had been filed. She conceded that she had a responsibility to read the conflict of interest code. Ricasa agreed that her administrative position at Southwestern and her board membership at SUHSD carried similar high ethical obligations, with the addition that her board membership included fiduciary responsibilities.

When the South Bay corruption scandal was ongoing SUHSD was the largest high school district in California and provided the largest percentage of students to Southwestern. SUHSD also worked with Southwestern to get its students into Southwestern. Dr. Nish testified that people frequently confused SUHSD and

28

Southwestern because of the connection between the two institutions. Several witnesses testified that Ricasa's criminal conduct tarnished Southwestern's reputation and negatively impacted the District's image. Norma Hernandez, the superintendent and president for the District until she retired in 2006, believed that a link existed between Ricasa's criminal conduct at SUHSD and her employment or duties and responsibilities at Southwestern based on the strong connection between SUHSD and Southwestern, the overlap in board members at SUHSD who are employees at Southwestern, and the sharing of contractors on bond projects.

Southwestern Board member Tim Nader also believed a link existed between Ricasa's conduct at SUHSD and Southwestern because some of Ricasa's criminal activities "took place on Southwestern College campus grounds using Southwestern College campus equipment on Southwestern College time." Additionally, he testified that "there is something untenable about saying on the one hand we're trying to promote a new era of good ethics and respect for law at Southwestern, and on the other hand one of our leaders has entered a guilty plea that not only—that includes language in that plea that indicates very deep involvement in these scandals. And I guess the third is that they were kind of—more than kind of—they were interrelated not only in terms of the public image of them because they were almost always reported together. When it was reported, for example, that Miss Ricasa was indicted and then pled guilty and convicted and sentenced and so forth, it was almost always mentioned at least that she was also an administrator of Southwestern College."

29

Ricasa agreed that the community viewed SUHSD and Southwestern as having significant ties. She also agreed that the close ties between the two institutions made it important for someone like her with connections to both institutions to act as a positive role model, to be above board and ethical in all dealings with both institutions, and that any unethical conduct by her would not be viewed favorably by the community. She testified that her positions at both institutions required that she avoid any conflicts of interest or appearance of impropriety, refrain from using district time, supplies and equipment for nondistrict activities, act within the law, act ethically, set a good example for her school, the student body and community, not use her position or employer's property to illegally benefit herself, and represent her employers as a positive role model.

Comparing Ricasa's own testimony regarding how she was expected to behave at Southwestern and SUHSD with her admitted conduct supports a conclusion that Ricasa engaged in immoral or unprofessional conduct. The evidence also shows that Ricasa's conduct as a SUHSD board member negatively impacted both institutions based on the close ties between the institutions.

To avoid this conclusion Ricasa complains that the ALJ and trial court failed to examine whether her conduct and misdemeanor conviction demonstrated her inability to perform her duties as an academic administrator. She argues that under *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 her demotion should be reversed because Southwestern failed to show a connection between her misconduct and her ability to perform her duties as an academic administrator. We disagree.

30

A person cannot be removed from or "denied government employment because of factors unconnected with the responsibilities of that employment." (*Morrison v. State Board of Education*, *supra*, 1 Cal.3d at p. 234; *Vielehr v. State Personnel Bd.* (1973) 32 Cal.App.3d 187, 192.) In determining whether the conduct indicates an unfitness to practice the profession in question the board "may consider" such matters as: (1) the likelihood that the conduct may have adversely affected others and the degree of such adversity anticipated; (2) the proximity or remoteness in time of the conduct; (3) the type of certification held by the party involved; (4) the extenuating or aggravating circumstances, if any, surrounding the conduct; (5) the praiseworthiness or blameworthiness of the motives resulting in the conduct; (6) the likelihood of the recurrence of the questioned conduct; and (7) the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the person involved or other people in the profession. (*Morrison v. State Board of Education,* at p. 229.) The *Morrison v. State Board of Education* factors are not rules, but broad classes of issues to be considered to assist in determining whether to impose discipline. Only the relevant factors need to be analyzed. (*West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1777 (*West Valley*).)

"Whether the conduct occurs on duty or off duty, whether the actor is a state employee or another public employee, the essential test is whether the conduct harms the public service. [Citation.] Once the determination is made that the misconduct has occurred, the administrative agency must be shown great deference in its determination of penalty." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50.) The trial

court must uphold the penalty determination of the agency absent a manifest abuse of discretion. (*West Valley*, *supra*, 16 Cal.App.4th pp. 1778-1779.) We use the same standard as the trial court. (*Id.* at p. 1779.) " 'If reasonable minds may differ as to the propriety of the discipline imposed, the administrative decision may not be regarded as an abuse of discretion.' " (*Ibid.*)

After considering the *Morrison v. State Board of Education* factors, the trial court upheld the ALJ's decision to demote Ricasa. Our consideration of those factors does not compel a contrary conclusion. First, it is likely that Ricasa's misconduct adversely affected students and the District. The scandal, and Ricasa's involvement, received extensive negative media coverage for Southwestern. A newspaper polled community members and found that only five individuals out of 111 that knew about Ricasa's plea bargain thought Ricasa should keep her job. (See *Broney v. California Com. on Teacher Credentialing* (2010) 184 Cal.App.4th 462, 477 [wearing an ankle bracelet to school for a month may have adversely affected others under first *Morrison v. State Board of Education* factor].)

Ricasa's misconduct involved her use of employer's resources, was not remote in time, and was aggravated because it resulted in a criminal conviction. Her misconduct, motivated by personal gain, is certainly blameworthy and her discipline does not chill any constitutional rights. Finally, even if it is unlikely that Ricasa will commit similar misconduct in the future, the risk here is the perception of students and the community that Ricasa serves as a poor role model. (See *Pettit v. State Board of Education* (1973) 10 Cal.3d 29, 36, fn. 7 ["[T]he 'risk of harm' which justified revocation of plaintiff's

32

license in this case is not the likelihood that plaintiff will perform additional sexual offenses but instead that she will be unable to teach moral principles, to act as an exemplar for her pupils, or to offer them suitable moral guidance."].)

Here, a rational connection existed between Ricasa's misconduct and her employment.[5] In sum, substantial evidence supported Southwestern's decision to demote Ricasa based on immoral or unprofessional conduct connected to her ability to carry out her job duties as an academic administrator. Accordingly, we need not address the remaining two bases for her demotion and express no opinion on them. We also perceive no abuse of discretion in Southwestern's chosen penalty.[6]

---

[5]    We acknowledge that Lillian Leopold, Chief Public Information and Government Relations Officer for Southwestern, commented in June 2012 about a lack of nexus between Ricasa's conduct as a SUHSD board member and her duties as a district administrator for Southwestern. Leopold made the comment as part of talking points for Ricasa's return to work, which was two years before the Amended Charges were brought against Ricasa. The context and timing of this comment decrease its value in the overall analysis.

[6]    In her Brown Act Petition Ricasa sought a peremptory writ of mandate ordering Southwestern to reinstate her original DSD position, with all attendant pay, benefits, seniority, and emoluments of that position. Our conclusion that the trial court did not err in upholding Ricasa's demotion moots her argument that she is entitled to reinstatement and we need not address the parties' arguments regarding this issue.

33

DISPOSITION

The judgment is modified to reverse the writ enjoining future Brown Act violations. The judgment is affirmed as modified. Southwestern Community College District Governing Board and Southwestern Community College District are entitled to their costs on appeal.


NARES, Acting P. J.

WE CONCUR:


DATO, J.


GUERRERO, J.

34

Filed 1/14/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ARLIE RICASA, | D071088 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2016-00010146-CU-WM-CTL) |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant; | |
| SOUTHWESTERN COMMUNITY COLLEGE DISTRICT GOVERNING BOARD et al., | |
| Real Parties in Interest and Respondents. | |
| ARLIE RICASA, | D071122 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2015-00025984-CU-WM-CTL) |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| SOUTHWESTERN COMMUNITY COLLEGE DISTRICT GOVERNING BOARD et al., | |
| Real Parties in Interest and Appellants. | |

THE COURT:

The opinion in this case filed December 17, 2018, was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

NARES, Acting P. J.

Copies to:  All parties